MAHONEY GREASE SERVICE, INC., Plaintiff-Appellant, *v.* THE CITY OF JOLIET *et al.*, Defendants-Appellees.

Third District   No. 79-23

Opinion filed June 19, 1980.—Rehearing denied July 29, 1980.

Richard T. Buck and Timothy J. Rathbun, both of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchinson, of Joliet, for appellant.

Raymond A. Feeley, of Kozlowski, Polito & Feeley, and Nicholas Sakellariou, both of Joliet, for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

The plaintiff, Mahoney Grease Service, Inc., filed a four-count complaint against the city of Joliet and 12 present and former city councilmen. Pursuant to a motion to dismiss all counts of the complaint under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45) the trial court dismissed all four counts of the complaint for failing to state a cause of action. The plaintiff has appealed from the dismissal of its complaint.

In 1971, a tract of land located in Will County, which will be referred to as the Mahoney land, was owned by Walter P. Anderson. The city of Joliet had begun a condemnation proceeding against the Chicago, Rock

Island and Pacific Railroad Company to condemn a parcel of its land near the Mahoney land. Walter P. Anderson *et al.* filed a cross-petition in those condemnation proceedings to obtain condemnation of some unknown type of covenant running with their land and for payment therefor. The Mahoney land was one of the parcels upon which the covenant ran with the land. Subsequently on October 11, 1972, all the issues raised in the condemnation proceedings were compromised and the cause was dismissed by court order. Part of the settlement agreement for dismissal of the condemnation proceedings provided that in exchange for the consent of the owner of the Mahoney land to the annexation of the Mahoney land to the city of Joliet, the city would zone the property I-2. Thereafter, on March 6, 1973, the Mahoney land was annexed to the city of Joliet and zoned I-1 in City Ordinances Nos. 5957 and 5958. Pursuant to the settlement agreement the city attempted to repeal the original I-1 zoning on July 17, 1973, by Ordinance No. 6017 and establish I-2 zoning. This ordinance was enacted without holding a hearing as required by law. It is conceded that this attempt at rezoning the property was invalid for failing to hold the required public hearing.

Without any notice of invalidity, in the summer of 1975, the plaintiff discovered the Mahoney land and found it to be suited for plaintiff's recycling and reclaiming plant. Plaintiff subsequently entered into a written contract to purchase the Mahoney land from Walter P. Anderson conditioned upon the plaintiff obtaining any necessary zoning for the proposed use of the property. The zoning board of appeals of the city of Joliet approved a conditional use permit conditioned only upon the facility meeting the requirements of the Environmental Protection Agency. Plaintiff ultimately completed the purchase of the Mahoney land and the Environmental Protection Agency issued plaintiff a permit. Plaintiff had many discussions with city officials with regard to issuing plaintiff a building permit for its facility. Various city department heads had assured the plaintiff that it could proceed with building the garage and office facility of the proposed rendering facility, and that the processing plant itself would be approved as soon as drawings of it were ready. In November of 1976 the city informed plaintiff that Ordinance No. 6017, which had attempted to establish I-2 zoning for the Mahoney land, was invalid because the required public hearing had not been conducted.

Thereafter on December 16, 1976, a hearing was held by the Joliet Plan Commission pursuant to a proper notice, on the petition of the city of Joliet to classify the Mahoney land as I-2 zoning. On February 2, 1977, the then city officials of Joliet rejected the favorable recommendation of the Joliet Plan Commission and denied the petition to zone the Mahoney land I-2. Prior to this denial of I-2 zoning of the subject property, the

plaintiff allegedly expended substantial sums of money relating to the development of its rendering facility on the Mahoney land.

In summary, the plaintiff's complaint alleged that the city of Joliet and its councilmen individually were obligated to zone the Mahoney land I-2 because of the settlement agreement by which the condemnation proceedings of the city and of plaintiff's predecessor in title were dismissed. Plaintiff claims to be an assignee and successor in interest of the settlement agreement and accordingly was entitled to have the agreement performed. Count I of the complaint alleges a breach of the settlement agreement by the city of Joliet and individually by each of the city councilmen named as defendants with damages of $1,514,799.36 resulting to plaintiff. Count II of the complaint states that the plaintiff is entitled to damages, pursuant to chapter 42 of the United States Code, section 1983, for being deprived of its property without due process of law by the action of the city councilmen in passing an invalid zoning ordinance initially and in failing to properly rezone the property I-2 in spite of their prior agreement to do so. Count III of the complaint alleges an action in inverse condemnation seeking damages from the city of Joliet for allegedly taking plaintiff's land without just compensation by representing that the Mahoney land was zoned I-2, when it was not and by a failure to zone the property I-2. Count IV of the complaint alleges wilful and wanton misconduct on behalf of some of the city councilmen individually in voting for an invalid ordinance that sought to rezone the Mahoney land I-2 and seeks damages from the city councilmen individually as named in the complaint.

The general issue presented on review is whether any of the counts of the plaintiff's complaint state a cause of action and consequently whether the trial court's dismissal pursuant to defendant's section 45 motion should be upheld. At the outset we have determined that the city councilmen as individual defendants cannot be liable in damages, and accordingly Counts I, II and IV of plaintiff's complaint were properly dismissed with regard to the city councilmen as individual defendants.

■■ It is well-settled rule that members of a municipal council are not liable personally for their legislative acts. (56 Am. Jur. 2d *Municipal Corporations* §146 (1971).) The authorities seemingly are in accord that, as a general rule, the members of legislative bodies cannot be held personally responsible in civil actions based upon their vote in the exercise of discretion vested in them by virtue of their office, either for or against any particular legislation. (Annot., 22 A.L.R. 125 (1923).) In counts I, II and IV of the complaint plaintiff seeks recovery from the city councilmen individually for their legislative action and/or inaction generally. Based upon the common law legislative immunity, plaintiff may not successfully maintain its claim against the individual councilmen

defendants. Under very similar facts the rezoning of property was held not to be actionable against members of a county council individually. (*Shellburne, Inc. v. New Castle County* (D. Del. 1968), 293 F. Supp. 237.) Additionally the officers of a municipal corporation, like those of a private corporation, are agents of the corporate body and are shielded from personal liability for their ordinary acts in behalf and for the corporate body. Common sense dictates this should be the result or chaos would be inevitable.

Also supportive of the trial court's dismissal, count IV, which alleges wilful and wanton misconduct by the individual councilmen defendants, is barred by the Local Governmental and Governmental Employees Tort Immunity Act. Ill. Rev. Stat. 1971, ch. 85, par. 2—205.

██ Affirming the dismissal of the individual city councilmen as defendants to counts I, II and IV of the complaint leaves only the issues raised by counts I and III against the city of Joliet. Count I alleges the city's liability for breach of the oral settlement agreement by which the condemnation proceedings were compromised. The city of Joliet clearly has the legal authority to settle and compromise litigation of disputed or doubtful claims. Such authority arises out of the power of a municipal corporation to sue and be sued. (*Agnew v. Brall* (1888), 124 Ill. 312; *People ex rel. Ammann v. Dipper* (1945), 392 Ill. 38, 63 N.E.2d 870.) The existence of the oral agreement to settle the condemnation proceedings is not denied. Defendant's contention is that the agreement is a void and *ultra vires* contract to which the city cannot be held. Unquestionably a municipal contract which is legally prohibited or beyond the power of the municipality is absolutely void and cannot be ratified by later municipal action. (*People ex rel. Stead v. Spring Lake Drainage & Levee Dist.* (1912), 253 Ill. 479, 97 N.E. 1042.) However, where the contract is within the corporate powers, but defectively or irregularly made it may be later ratified by the action of the municipality. (*Town of Bruce v. Dickey* (1886), 116 Ill. 527, 6 N.E. 435). In the case before us the settlement of disputed litigation and the annexation and zoning of land are within the legal authority of the city of Joliet to accomplish and are not absolutely void acts per se. It is also established law that the city can ratify the out-of-court compromise of litigation by the city attorney. In *City of Chicago v. Norton Milling Co.* (1902), 196 Ill. 580, the city ratified the settlement of a condemnation action by city officers even though they lacked express authority to enter into the contract initially. Here we believe the plaintiff's complaint states a cause of action in that the city council may well have ratified the settlement agreement of the city attorney by its subsequent acts.

The plaintiff's complaint also states sufficient facts from which the city of Joliet could be held to have been estopped to assert the invalidity

of the original ordinance zoning the Mahoney land I-2. The city of Joliet, in trying to comply with the settlement agreement, in addition to annexation of the Mahoney land, attempted to rezone the land I-2 in an invalid ordinance. The city retained the benefits of the dismissal of the condemnation proceedings. As outlined above, we conclude that the settlement agreement was not absolutely void or *ultra vires*. The invalidity in the ordinance which rezoned the Mahoney land was a failure to hold a public hearing. A similar irregularity was also present in *Branigar v. Village of Riverdale* (1947), 396 Ill. 534, 72 N.E.2d 201, where estoppel was applied against a municipal corporation in a breach of contract action to prevent the municipality from relying upon the invalidity of the contract. Where municipalities have received and accepted the benefits of a contract, they are estopped to deny the validity of the very contract through which they received the benefits. (*Mock v. Higgins* (1954), 3 Ill. App. 2d 281, 121 N.E.2d 865; *People ex rel. Nelson v. Homewood State Bank* (1938), 294 Ill. App. 52, 13 N.E.2d 285.) We believe an estoppel theory is applicable to the instant case. Accordingly, we hold plaintiff's complaint stated a cause of action against the city of Joliet in count I.

■ The defendants have also argued that the settlement agreement is void because it would require the city to part with its legislative discretion. It is contended that the settlement contract would control and embarrass the city's legislative powers and duties. (*Selby v. Village of Winfield* (1929), 255 Ill. App. 67.) To the contrary, we believe the settlement agreement involved in this case was within that class of municipal contracts which is not void absolutely and consequently the type that a city may ratify or be estopped to deny. (*People ex rel. Stead v. Spring Lake Drainage & Levee Dist.* (1912), 253 Ill. 479, 97 N.E. 1042.) "Estoppel may even be applied against the State when acting in its governmental capacity." (*Stahelin v. Board of Education* (1967), 87 Ill. App. 2d 28, 39, 230 N.E.2d 465, 471.) Accordingly, whether the theory of estoppel or ratification of the settlement contract applies should be determined by the trial court after a consideration of all the circumstances of the case. In *Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 280 N.E.2d 552, a contract which settled a dispute between a landowner and the city, which required the landowner to demolish a building as a condition for the granting of a zoning variance, was upheld. Similarly, we believe count I of the complaint states a cause of action for breach of the settlement agreement for which damages may be recoverable by plaintiff. The trial court erred in dismissing count I of the complaint against the city of Joliet.

■ Count III of plaintiff's complaint names only the city of Joliet as defendant and seeks damages based upon a theory of inverse condemnation. A cause of action does exist where the government takes

property without justification and does not institute condemnation proceedings. (*Roe v. County of Cook* (1934), 358 Ill. 568, 193 N.E. 472.) The present appeal is not such a case. Inverse condemnation requires that defendant's property be actually taken or damaged. (*Department of Transportation v. Veach Oil Company* (1974), 22 Ill. App. 3d 229, 317 N.E.2d 404.) In determining the sufficiency of plaintiff's complaint to state a cause of action we are obliged to accept the allegations of properly pleaded facts as the truth in the context of a motion to dismiss. Even based upon this lenient view of the facts, we cannot agree that the allegations of count III of the complaint sufficiently assert some taking of plaintiff's land or some damage thereto. We find the plaintiff has lost no property or property right to the defendant city of Joliet. Count III of the complaint was properly dismissed.

For the reasons stated the judgment of the Circuit Court of Will County is reversed with regard to the dismissal of count I of the complaint as to the defendant, city of Joliet, and remanded for trial on that count. The trial court is, otherwise, affirmed in all respects.

Affirmed in part, and reversed in part and remanded.

STOUDER, P. J., and STENGEL, J., concur.